FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

2016 MAR 31  AM 9: 58

U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
             DEPUTY

| | |
|---|---|
| ENRIQUE MARROQUIN, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | NO. EP-12-CV-425-MAT |
| § | |
| CAROLYN W. COLVIN, § | |
| ACTING COMMISSIONER OF THE § | |
| SOCIAL SECURITY ADMINISTRATION,[1] § | |
| § | |
| Defendant. § | |

## MEMORANDUM OPINION AND ORDER

This is a civil action seeking judicial review of an administrative decision. Plaintiff appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his claim for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. Jurisdiction is predicated upon 42 U.S.C. § 405(g). Both parties having consented to trial on the merits before a United States Magistrate Judge, the case was transferred to this Court for trial and entry of judgment pursuant to 28 U.S.C. § 636(c) and Appendix C to the Local Court Rules of the Western District of Texas. For the reasons set forth below, the Commissioner's decision is AFFIRMED.

## I. PROCEDURAL HISTORY

On August 31, 2007, Plaintiff filed an application for DIB in which he alleged disability

---

[1] Carolyn W. Colvin became Acting Commissioner of the Social Security Administration on February 14, 2013. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure and the last sentence of 42 U.S.C. § 405(g), she is substituted as the Defendant herein.

1

beginning August 1, 2006 due to diabetes, insomnia, and problems with his shoulders, back, and knees. (R. 205, 231).[2] Plaintiff was 35 years old at the time of filing. (R. 205). He attended high school through grade 12, but did not graduate. (R. 73). He later obtained his GED. *Id.* He has previous work experience as a bus driver from 1991 to 2006. (R. 76, 237).

After his application was denied initially and upon reconsideration, Plaintiff requested a hearing before an administrative law judge ("ALJ"). (R. 106-110, 116-118, 119-125). On October 15, 2009, Plaintiff appeared for a hearing. (R. 62-105). For reasons not explained by the parties, Plaintiff appeared for another hearing on May 11, 2011. (R. 32-59). On July 15, 2011, the ALJ issued a written decision denying benefits on the ground that Plaintiff is able to perform work available in significant numbers in the national economy, and therefore, is not disabled. (R. 13-23). On August 23, 2012, the Appeals Council denied Plaintiff's request for review, thereby making the ALJ's decision the Commissioner's final administrative decision. (R. 1-6).

## II. ISSUES PRESENTED

Plaintiff presents two issues for review: (1) whether the ALJ's residual functional capacity ("RFC") assessment is supported by substantial evidence; and, (2) whether the ALJ committed reversible error by failing to consider whether the claimant was capable of maintaining employment for a significant period of time.

## III. DISCUSSION

A. Standard of Review

This Court's review is limited to a determination of whether the Commissioner's final

---

[2] Reference to the record of administrative proceedings is designated by (R.[page number(s)]).

2

decision is supported by substantial evidence on the record as a whole and whether the Commissioner applied the proper legal standards in evaluating the evidence. *Myers v. Apfel*, 238 F.3d 617, 619 (5th Cir. 2001) (citing *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994)). Substantial evidence is more than a scintilla, but less than a preponderance, and is such relevant evidence as a reasonable mind might accept to support a conclusion. *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). A finding of "no substantial evidence" will be made only where there is a "conspicuous absence of credible choices" or "no contrary medical evidence." *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988).

In determining whether there is substantial evidence to support the findings of the Commissioner, the court must carefully examine the entire record, but may not reweigh the evidence or try the issues *de novo*. *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000); *Haywood v. Sullivan*, 888 F.2d 1463, 1466 (5th Cir. 1989). The court may not substitute its own judgment "even if the evidence preponderates against the [Commissioner's] decision" because substantial evidence is less than a preponderance. *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988). Conflicts in the evidence are for the Commissioner and not the courts to resolve. *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993). If the Commissioner applied the proper legal standards and her findings are supported by substantial evidence, they are conclusive and must be affirmed. *Id.*

B. Evaluation Process and Burden of Proof

Disability is defined as the "inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability claims are evaluated according to a five-step sequential process: (1) whether the claimant is currently

engaged in substantial gainful activity; (2) whether the claimant has a severe medically determinable physical or mental impairment or combination of impairments; (3) whether the claimant's impairment or combination of impairments meets or equals the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) whether the impairment or combination of impairments prevents the claimant from performing past relevant work; and, (5) whether the impairment or combination of impairments prevents the claimant from doing any other work. 20 C.F.R. § 404.1520. A finding that a claimant is disabled or not disabled at any point in the process is conclusive and terminates the analysis. *Greenspan*, 38 F.3d at 236.

The claimant bears the burden of proof on the first four steps of the sequential analysis. *Leggett v. Chater*, 67 F.3d 558, 565 (5th Cir. 1995). Once this burden is met, the burden shifts to the Commissioner to show that there is other substantial gainful employment available that the claimant is capable of performing. *Anderson v. Sullivan*, 887 F.2d 630, 632 (5th Cir. 1989). The Commissioner may meet this burden by the use of opinion testimony of vocational experts or by use of administrative guidelines in the form of regulations. *Rivers v. Schweiker*, 684 F.2d 1144, 1155 (5th Cir. 1982). If the Commissioner adequately points to potential alternative employment, the burden then shifts back to the claimant to prove that he is unable to perform the alternative work. *Id.*

C. The ALJ's Decision

In his written decision, the ALJ determined as a threshold matter that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2010. (R. 15). At step one, the ALJ found Plaintiff did not engage in substantial gainful activity from the alleged onset date of August 1, 2006 through his date last insured of December 31, 2010. *Id.* At step two, the ALJ

determined Plaintiff has severe impairments consisting of bipolar disorder, alcohol dependence in remission, obesity, and low back pain. The ALJ further determined Plaintiff's impairments of diabetes mellitus, sleep apnea, and history of knee surgery are non-severe. (R. 15-16). The ALJ noted Plaintiff's diabetes was controlled with medication and diet. (R. 15). He further noted Plaintiff was not compliant with the use of his NCPAP machine for sleep apnea although when he used it, it provided a significant response. (R. 15-16). At step three, the ALJ determined Plaintiff does not have an impairment or combination of impairments that meets or equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 16-17).

Before reaching step four, the ALJ assessed Plaintiff's RFC and found he is able to perform sedentary work[3], and is limited to simple one to two step job tasks. (R. 17-21). In making this RFC assessment, the ALJ determined Plaintiff's allegations regarding the intensity, persistence, and limiting effects of his symptoms were not entirely credible. (R. 18).

At step four, the ALJ found that Plaintiff was unable to perform his past relevant work as a local bus driver. (R. 21). At step five, the ALJ found, considering Plaintiff's age, education, work experience, and RFC, that there are jobs existing in significant numbers in the national economy that Plaintiff can perform, including final assembler, ink printer, and motor polarizer. (R. 21-22). Thus, the ALJ concluded at step five that Plaintiff is not disabled. (R. 22).

---

[3] Sedentary work is defined in the regulations as lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. § 404.1567(a).

D. Analysis of Plaintiff's Claims

1. RFC Assessment is Supported by Substantial Evidence

Plaintiff contends the ALJ's assessment of his RFC is not supported by substantial evidence because the ALJ failed to accommodate Plaintiff's limitations in sitting, standing, and walking, and seeing which result from Plaintiff's impairments of diabetes, problems with his knees, shoulder, and back, and sleep apnea. In support, Plaintiff relies on: (1) his subjective testimony and reports; and, (2) medical evidence of his diagnosed conditions. (ECF No. 19, Pl.'s Brief at 4-6).

RFC is defined as the most an individual can still do despite his limitations. 20 C.F.R. § 404.1545; Social Security Ruling ("SSR") 96-8p[4]. The responsibility to determine the claimant's RFC belongs to the ALJ. *Ripley*, 67 F.3d at 557. In making this determination, the ALJ must consider all the record evidence and determine Plaintiff's abilities despite his physical and mental limitations. 20 C.F.R. § 404.1545. The ALJ must consider the limiting effects of Plaintiff's impairments, even those that are non-severe, and any related symptoms. *See* 20 C.F.R. §§ 404.1529, 404.1545; SSR 96-8p. The relative weight to be given to the evidence is within the ALJ's discretion. *See Chambliss v. Massanari*, 269 F.3d 520, 523 n.1 (5th Cir. 2001) (citing *Johnson v. Bowen*, 864 F.2d 340, 347 (5th Cir. 1988)). The ALJ is not required to incorporate limitations in the RFC that he did not find to be supported in the record. *See Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988).

As stated by the ALJ, the issue of credibility is an integral part of the decision-making process. (R. 20). Plaintiff's argument is based in large part on his subjective complaints and reports

---

[4] SSR 96-8p, *Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims*, 1996 WL 374184 (July 2, 1996).

of pain and limitations. Contrary to Plaintiff's contention, the ALJ considered Plaintiff's subjective complaints, and found Plaintiff was not fully credible. (R. 18, 20-21). Indeed, the ALJ opined Plaintiff engaged in exaggeration and material omission. (R. 20).

In reaching his determination that Plaintiff was less than credible, the ALJ noted the following. Plaintiff testified on May 11, 2011 that side effects from his medication constitute one of his two biggest problems. The treatment notes from Dr. Nour dated April 4, 2011, however, indicate Plaintiff denied he was experiencing any medication side effects. (R. 20, 694). Plaintiff also testified he hears voices, however, his treatment notes indicate exactly the opposite. *Id.* Additionally, he testified he was committed to a mental health hospital by his wife, however, on further questioning Plaintiff admitted his hospitalization was voluntary. (R. 20, 38-39, 40-41). Finally, treatment notes dated February 22, 2011[5] state Plaintiff "also has been trying to maintain job activities with construction work, but due to ... [his impairments]... he has not been able to hold a job." (R. 20, 651). The ALJ noted that neither Plaintiff's work history nor his testimony reflected any such work. Additionally, one month earlier Plaintiff reported to Dr. Cromer that he was "doing much better" and feeling better after treatments to his back. (R. 20, 653). Although Plaintiff argues he is unable to perform even sedentary work, Dr. Cromer recommended Plaintiff "get a gym membership and be routine in terms of working out three times a week." (R. 653). Assessment of credibility is the province of the ALJ, and his credibility determination is entitled to great deference. *Greenspan*, 38 F.3d at 237; *Newton*, 209 F.3d at 459. The Court declines to reweigh the subjective

---

[5] This report was prepared by Dr. Barry Cromer of the El Paso Orthopaedic Surgery Group upon Plaintiff's request for an evaluation of complaints of recurrent back pain and episodes of radiating leg pain for purposes of obtaining disability benefits. Dr. Cromer told Plaintiff he did not do disability evaluations and referred Plaintiff to Dr. Mrochek. (R. 651).

evidence upon which Plaintiff relies.

In addition to his subjective testimony and reports which the ALJ did not find to be fully credible, Plaintiff relies primarily on a recitation of the numerous medical conditions with which he has been diagnosed at various times, including morbid obesity, obstructive sleep apnea, arthralgias of both knees due to degenerative joint disease, lumbago with radiculopathy, spondylosis at T12-L1, disc protrusion at L3-L4 and L4-L5 with nerve root impingement and moderate central canal narrowing, sciatica, migraine headaches, clinical depression aggravated by sleep disorder, uncontrolled diabetes mellitus type 2, dyspnea upon exertion and intolerance to physical activity due to deconditioning and suspected pulmonary hypertension with right ventricular strain, and refractive visual defect.[6] (ECF No. 19, pp. 5-6, R. 329, 376, 492, 500, 502, 522, 527, 558, 564, 641-643). As pointed out by the Commissioner, the proper focus of a disability determination is not on the diagnoses, but on the resulting functional limitations. *See Barajas v. Heckler*, 738 F.2d 641, 644 (5th Cir. 1984) (mere diagnosis of a condition without resulting significant functional restrictions is not disabling within the Act).

Plaintiff also relies on his difficulty performing tandem walking, squatting, kneeling, hopping, and climbing at the consultative examination. As correctly stated by the Commissioner, there is no indication that the sedentary jobs identified by the VE would require Plaintiff to perform

---

[6] Although Plaintiff claims his limitations in seeing were not considered, the record shows that on October 26, 2007, Plaintiff underwent an eye test. (R. 329). The diagnosis of refractive visual defect was based on the eye test results without glasses. In a disability report dated September 10, 2007, however, he reported no difficulty with reading the newspaper. (R. 245). There is no showing that Plaintiff's vision problems could not be corrected by prescription eyeglasses. *See Johnson v. Bowen*, 894 F.2d 683, 685 n.4 (5th Cir. 1988) (an individual who fails to follow prescribed treatment will not be found to be disabled); 20 C.F.R. § 404.1530; *see also Epps v. Harris*, 624 F.2d 1267, 1270 (5th Cir. 1980) (conditions controlled or controllable by treatment are not disabling).

any of these activities. Sedentary work involves sitting, but may also require occasional walking and standing. 20 C.F.R. § 404.1567(a). At the consultative examination, Plaintiff was reported to have unremarkable posture, normal gait, no sensory deficits, no significant motor deficits, symmetrical deep tendon reflexes, intact coordination, and no abnormal muscle movements. (R. 328-329).

As for the effects of Plaintiff's diabetes, as noted by the ALJ, the record shows that his diabetes is uncontrolled when he is not following a diabetic diet and not compliant with his medication. (R. 15, 392, 393, 396, 486, 517). Conversely, with proper treatment his diabetes is controlled, and he "does not experience any problems as long as he remains compliant with [the] treatment regimen." (R. 15, 555, 566-631). Conditions that can be controlled with proper treatment are not disabling. 20 C.F.R. § 404.1530; *Johnson*, 894 F.2d at 685 n.4; *Epps*, 624 F.2d at 1270. The ALJ also discussed the medical assessment form regarding diabetes completed by Erik Chaparro, a physician's assistant. (R. 19, 663-664). The ALJ properly gave little weight to this checklist type of opinion as it was conclusory and was not supported by any evidence regarding either the treating relationship or the results of any clinical testing. (R. 19). Additionally, the ALJ noted that the assessment was completely inconsistent with Plaintiff's testimony at the hearing that his diabetes is controlled with medication. (R. 19, 46-47).

Finally, the ALJ did not ignore Plaintiff's back and leg problems. He discussed the results of the consultative examination performed by Enrique Porras, M.D. on October 26, 2007, and recognized the findings which included, *inter alia*, arthralgias of both knees due to degenerative disc disease, lumbago, and spondylosis. (R. 19, 326-329). He also discussed the treatment records of the El Paso Orthopaedic Surgery Group which noted Plaintiff had been doing quite well until recently when he suffered an acute exacerbation of his back and left leg pain. (R. 20, 564, 634-653).

The ALJ noted that the increased pain apparently was caused by discontinuing the treatment regimen of physical therapy and steroid injections. (R. 20). The ALJ found Plaintiff's low back pain to be severe, and he reduced Plaintiff's RFC to sedentary work. The ALJ did not ignore the evidence regarding any of Plaintiff's back and leg problems. Instead, he determined the evidence did not support the degree of limitation alleged by Plaintiff.

In determining that Plaintiff retained the RFC for sedentary work limited to simple one to two step job tasks, the ALJ thoroughly discussed the evidence as it related to all of Plaintiff's impairments, both severe and non-severe. A review of the objective medical evidence does not support Plaintiff's contention that the ALJ improperly assessed his RFC. *See Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992) (subjective complaints unsubstantiated by medical findings need not be credited over conflicting medical evidence). Simply stated, the evidence cited by Plaintiff does not support the need for further limitations in his RFC than those assessed by the ALJ.

## 2. No Separate Finding Regarding Ability to Maintain Employment Required

Plaintiff contends the ALJ committed reversible legal error by failing to make a separate finding regarding his ability to maintain employment as required by *Singletary v. Bowen*, 798 F.2d 818 (5th Cir. 1986).[7] Plaintiff concedes that such a finding is not required in every case. *Frank v. Barnhart*, 326 F.3d 618, 619 (5th Cir. 2003). He argues, however, that such a finding is required in his case because the medical evidence shows he experiences intermittent periods of incapacity due to his severe impairment of bipolar disorder which causes him to experience intermittent mood fluctuations.

---

[7] In *Singletary*, the Court held that substantial evidence did not support a finding that the claimant "could maintain employment" because his "personal history indicated that he was never able to hold a job for long periods of time" due to mental problems. *Id.* at 822-23.

In support, Plaintiff relies on his testimony at the administrative hearing that he was hospitalized in July 2010 for about a month for behavioral issues, uncontrollable anger, and depression, and afterward he was seen on frequent visits which were eventually reduced to once every three months. (R. 38-39). Plaintiff also relies on his various subjective reports of feeling sad, moody, impatient, angry, betrayed, tired, useless, physically broken, and having problems dealing with stress, pressure, criticism, and changes in routine. (R. 263, 265, 266, 267).

Plaintiff further relies on the observation of Dr. Porras that Plaintiff had a pervasive sense of sadness, was emotionally labile, easily angered, and had frequent crying spells. (R. 327). A review of this cited page shows that Dr. Porras was summarizing Plaintiff's subjective report of symptoms. *Id.* Dr. Porras noted Plaintiff became emotional when talking about his bariatric surgery. *Id.* He also noted the Zung Self-Rating Depression questionnaire revealed a score that indicates severe depression. *Id.* Dr. Porras further noted Plaintiff was alert and oriented in all spheres, with appropriate affect. (R. 329). There is nothing in Dr. Porras' report that would indicate Plaintiff's mental symptoms wax and wane with a frequency and severity that would prevent him from performing maintaining employment performing simple one to two step jobs at the sedentary level.

Plaintiff also relies on the report of the consultative mental examiner, Dr. Guido Barrientos, dated December 6, 2007. (R. 334-337). At the time of the examination, Plaintiff was not receiving mental health treatment and was not taking psychiatric medication. (R. 335). In fact, he reported he had never been evaluated or treated by any mental health care professional. *Id.* Although Dr. Barrientos stated Plaintiff had poor judgment and insight, he also found Plaintiff was well-oriented, and able to focus on questions and provide rational answers. (R. 336). Plaintiff was relaxed and quiet, and did not appear to be under stress or agitated. *Id.* Although his mood was low, he did not

appear to be clinically depressed. *Id.* Although his cognitive functions seemed dull, he had no memory problems. *Id.*

Dr. Barrientos observed Plaintiff's educational level was low, and he appeared to be of low average intelligence, with poor understanding of his medical problems. *Id.* While Plaintiff points out that Dr. Barrientos recommended he receive psychiatric care and psychotherapy, the report clearly indicates that with treatment and vocational rehabilitation, Plaintiff could find a job within his limitations. *Id.* The report contains no information that indicates Plaintiff can not maintain employment.

Plaintiff relies on the October 2009 diagnosis of major depressive disorder and GAF of 45[8] by Dr. Muniz. (R. 425). As pointed out by the Commissioner, however, Muniz is a licensed professional counselor, not a medical doctor. (R. 418). The record shows that after the October 2009 evaluation, Plaintiff did not return for his follow up appointments until April 2010. (R. 478). By early June 2010, shortly after resuming therapy, Plaintiff's mood was even, his affect was congruent, his motor activity was good, his thought process was good, his thought content was good, his attention was appropriate, and his appearance was appropriate. (R. 481). Plaintiff stated he had

---

[8] The Global Assessment of Functioning Scale is used by mental health clinicians and physicians to rate an individual's overall level of psychological, social, and occupational functioning on a scale of 0 to 100. American Psychiatric Association, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 32-34 (4th ed. 2000). A GAF of 41-50 indicates "[s]erious symptoms ... OR any serious impairment in social, occupational, or school functioning ... ." *Id.* at 34.

GAF scores are not entitled to significant weight as an indicator of disability. *See Hill v. Astrue*, 2009 WL 2901530, at *7(S.D. Tex. Sept. 1, 2009) (noting the GAF scale, while potentially relevant, does not directly correlate to an individual's ability or inability to work). The Commissioner has specifically declined to endorse the GAF scale for use in the disability programs. *See Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury*, 65 Fed. Reg. 50,746, 50,764-65, 2000 WL 1173632 (Aug. 21, 2000).

better control of his moods, and felt hopeful about the future. *Id.*

Plaintiff also cites to treatment records from his psychiatric hospitalization at University Behavioral Health ("UBH") from May 6, 2010 to May 18, 2010. (R. 460-476). As noted by the ALJ, the notes show that upon admission to UBH, he was placed on the alcohol dependence withdrawal protocol as he admitted to regularly drinking two bottles of wine three times a week and reported hallucinations and sensations of spiders crawling on his body. (R. 20, 460-461). At the time of his discharge from UBH, Plaintiff was diagnosed by Dr. Nour with schizoaffective disorder (bipolar type) and alcohol dependence. His GAF was reported to be 60.[9] (R. 460). Plaintiff further relies on Dr. Nour's April 2011 assessment of schizoaffective disorder (bipolar type), alcohol dependence in remission, and a GAF score of 60-65.[10] (R. 694). As noted by the Commissioner, the treatment records indicate Plaintiff improved with treatment and medication compliance. (R. 471-474). The mental health treatment records fail to support Plaintiff's claim that he is unable to maintain employment.

The Court notes the ALJ properly gave little weight to Dr. Nour's medical source statement dated March 5, 2011 that showed Plaintiff has marked limitation in a wide variety of functional areas and would suffer a high rate of absenteeism. The ALJ discounted Dr. Nour's opinion due to a combination of factors, including inconsistency with Dr. Nour's own treatment notes from the

---

[9] A GAF of 51-60 indicates "[m]oderate symptoms ... OR moderate difficulty in social, occupational, or school functioning ... ." American Psychiatric Association, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 34 (4th ed. 2000).

[10] A GAF of 61-70 indicates "[s]ome mild symptoms ... OR some difficulty in social occupational, or school functioning ..., but generally functioning pretty well. Has some meaningful interpersonal relationships. American Psychiatric Association, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 34 (4th ed. 2000).

following month, as well as unresolved inconsistencies in the nature and frequency of the treating relationship. (R. 18, 656-660). When good cause is shown, an ALJ may give less weight, little weight, or even no weight to any physician's opinion. *Greenspan*, 38 F.3d at 237 (citing *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985)).

Finally, Plaintiff relies on the vocational expert's affirmative response to the ALJ's hypothetical question of whether a person who is unable to maintain concentration, persistence and pace for up to two hours at a time and is unable to complete a normal 40-hour work week is typically unsuitable for competitive employment. (R. 57). As the ALJ did not find Plaintiff was unable to maintain concentration, persistence and pace for up to two hours at a time and/or unable to complete a 40-hour work week, the VE's testimony on this point is irrelevant. *Owens v. Heckler*, 770 F.2d 1276, 1282 (5th Cir. 1985) (When hypothetical testimony by the VE is unsupported by the evidence, the ALJ may properly disregard that testimony).

A reading of the opinion shows the ALJ considered both Plaintiff's subjective complaints regarding his mental status and his psychiatric admission in reaching his conclusion that Plaintiff's mood disorder has shown dramatic improvement over time. Based on his evaluation of the record as a whole, the ALJ opined that the most serious of Plaintiff's symptoms were temporary in nature and were largely attributable to substance abuse, now in remission. There is no showing that the ALJ committed legal error by failing to make a separate finding regarding Plaintiff's ability to maintain employment. As substantial evidence supports the ALJ's decision, it must be affirmed.

## CONCLUSION

It is therefore ORDERED that the decision of the Commissioner be, and it is hereby, AFFIRMED.

SIGNED and ENTERED this **31st** day of March, 2016.

MIGUEL A. TORRES
UNITED STATES MAGISTRATE JUDGE